IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI GRAHAM, and PAUL GRAHAM, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 09–969 |
| | ) Judge Nora Barry Fischer |
| PROGRESSIVE DIRECT INSURANCE COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Presently before the Court is a motion for reconsideration filed on June 28, 2010 by Plaintiffs Lori and Paul Graham in this case involving their claims for underinsured motorists benefits ("UIM"), bad faith, and loss of consortium (by Paul Graham only) against Defendant Progressive Direct Insurance Company. (Docket No. 79). Plaintiffs' motion requests that the Court reconsider its earlier Order (Docket No. 62), adopting the Report & Recommendation ("R & R") by Special Master Mark Gordon, Esquire (Docket No. 62-1). Specifically, they seek reconsideration of the ruling that Plaintiffs are not entitled to discovery of similar claims information, or information regarding Defendant's valuation of insurance claims by other local claimants for shoulder and knee injuries, which are similar to the claim for benefits made by Plaintiff Lori Graham.[1] (Docket No. 79). The motion has been fully briefed, the parties have presented evidence and oral argument was

---

[1] The Court notes that the full procedural history of the prior discovery motions are more fully set forth in the R & R (Docket No. 62-1) and this Court's Memorandum Order of July 9, 2010 (Docket No. 96), discussing the history of the many discovery disputes throughout this case.

1

held on July 21, 2010. (Docket Nos. 79, 80, 97, 98, 100, 101, 104, 105, 109).[2] Upon consideration of the parties' arguments and the submitted evidence, and for the following reasons, Plaintiffs' Motion [79] is denied.

It is well settled that reconsideration of a prior order is only warranted if the moving party demonstrates: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)). "Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided." *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D.Pa.1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992)).

As a preliminary matter, Plaintiffs do not assert that there have been any changes in the controlling law since the R & R and subsequent Order were issued. Nor have Plaintiffs directly challenged the factual findings or legal rulings set out in same. Indeed, they were given multiple opportunities to challenge those factual findings and legal rulings; they had seven (7) days to object to the R & R by virtue of this Court's Order of February 16, 2010 (Docket No. 59), and, after that period expired and the Court adopted the Special Master's R & R, they had an additional seven (7)

---

[2] Per the Court's request, Plaintiffs also hand delivered the full transcripts of the relied upon depositions, those of the claims adjuster that handled Mrs. Graham's claim, Kacey Petrazio and her supervisor, Karen Castelli. The Court has read and digested both transcripts.

days to file a motion for reconsideration pursuant to this Court's Practices and Procedures.[3] Instead, Plaintiffs admit that they chose not to object to those rulings for strategic reasons. (*See* Docket No. 80 at 4 (conceding that "[w]hile the Grahams disagreed with the recommendations of the Special Discovery Master in this case, they were reluctant to challenge the findings ...")). This appears to have been the proper decision, because, as the Court recognized at the motion hearing, the majority of the opinions addressing this issue disfavor the discovery of similar claims evidence in bad faith cases. *See e.g., McCrink v. Peoples Benefit Life Ins. Co.*, Civ. A. No. 04-1068, 2004 WL 2743420 (E.D.Pa. Nov. 29, 2004)(discovery of previous lawsuits against insurance company defendant in bad faith case denied); *Cantor v. Equitable Life Assurance Society of the United States*, Civ. A. No. 97-5711, 1998 WL 306208 (E.D. Pa. June 9, 1998)(same); *Kaufman v. Nationwide Mut. Ins. Co.*, Civ. A. No. 97-1114, 1997 WL 703175 (E.D.Pa. Nov. 12, 1997)(same); *Schellenberger v. Chubb Life America*, Civ. A. No. 95-4514, 1996 WL 92092 (E.D.Pa. Feb. 29, 1996)(same); *North River Ins. Co. v. Greater New York Mutual Ins. Co.*, 872 F.Supp. 1411 (E.D. Pa. 1995)(same); *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, Civ. A. No. 88-9752, 1991 WL 183842 (E.D. Pa. Sept. 16, 1991)(same). The Court finds these decisions persuasive. Moreover, these holdings are in accord with the Special Master's ruling, despite the fact that he did not specifically rely on them.

The Court is also not convinced that the requested similar claims information should be discoverable under *Insurance Federation of Pennsylvania, Inc. v. Commonwealth, Department of Insurance ("Koken")*, 889 A.2d 550 (Pa. 2005). The Court acknowledges the subsequent effect of

---

[3] *See* http://www.pawd.uscourts.gov/Documents/Public/Reference/JudgeNoraBarryFischer.pdf (effective 3/23/10).

the *Koken* decision on the preferred venue for insurance litigation in a court of law rather than in arbitration, and Plaintiffs' argument that the alleged removal of the arbitration clause in the insurance policy at issue in this case flowed from the *Koken* decision and may have had a negative impact on Defendant's valuation of Mrs. Graham's claim. However, this argument was presented to the Special Master, he specifically rejected it, and this Court adopted his holding. To that end, "Plaintiffs' request for the production of similar claim valuation data pre- and post- *[Koken]*" was denied, except that Plaintiffs were permitted discovery of post-*Koken* claims *if* it was determined that Defendant used its Claims Outcome Advisor computer program to evaluate Lori Graham's claim. (Docket No. 62-1 at 7). Plaintiffs' counsel conceded at oral argument that the Claims Outcome Advisor program was not employed in valuing Mrs. Graham's claim and they have presented no evidence that suggests otherwise. (*See* Docket No. 111 at 18-19). Thus, Plaintiffs' continued reliance on the same pre- and post-*Koken*[4] theory of bad faith in support of their request for similar claims information (that was raised before and then ruled upon by the Special Master and adopted

---

4

Plaintiffs also rely, in part, on *Bukofski v. USAA Casualty Ins. Co.*, Civ. A. No. 08-1779, 2009 WL 1609402 (M.D.Pa. Jun. 9, 2009). However, that ruling addressed a motion to dismiss filed by the defendant insurer, and did not involve a dispute over the discovery of similar claims information nor a motion for reconsideration of an earlier court order denying the requested discovery, as in the present matter. Further, in his ruling, Judge Munley noted that <u>if</u> the plaintiffs proved that the arbitration clause in that case was removed without notice, "a statutory bad faith claim <u>might</u> be established," *Bukofski*, 2009 WL 1609402, at *5 (emphasis added), presumably deferring a decision on the ultimate dispute until summary judgment or some later stage. To this Court's knowledge, *Bukofski* settled before summary judgment motions were brought.

We are beyond the pleading stage in this case. And, as discussed below, when Plaintiffs had the opportunity to depose the claims' handlers, Petrazio and Castelli, they did not examine them regarding pre- and post-*Koken* training methods or policies implemented by Defendant in order to demonstrate that Mrs. Graham's claim may have been handled differently by Defendant pre- and post-*Koken*. Nor did they examine them as to their individual case handling as to whether the decision in *Koken* had any kind of impact on how they evaluated cases. Therefore, the request for similar claims information relies on previously presented legal argument, rather than new evidence.

by this Court, without objection), while intriguing, does not support reconsideration given the facts before the Court.[5] *See Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D.Pa. 2002)(quotations omitted)("A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.").

Aside from the finding that the prior ruling as to Plaintiffs' discovery requests is legally unassailable, the Court does not believe that the new evidence presented by Plaintiffs demonstrates that Defendant opened the door wide enough to permit Plaintiffs to discover the similar claims information they seek. A motion for reconsideration relying on the discovery of new evidence subsequent to an initial order should only be granted if the party presenting the new evidence demonstrates that the new evidence would have changed the initial rulings. *See Max's Seafood*, 176 F.3d at 677. In this Court's estimation, the new evidence presented here – the deposition testimony of Kacey Petrazio and Karen Castelli and the letter by Michael A. Sablak, Esquire to the insurance commissioner – do not demonstrate that the Special Master's rulings and this Court's affirmance would have been different had this "new" evidence been presented.

At oral argument, the Court intimated that Plaintiffs had not met their burden on

---

[5] The Court also rejects Plaintiffs' argument that reconsideration is warranted because of Defendant's use of blanket objections in response to their initial discovery requests. In this Court's estimation, the use of blanket objections is certainly a disfavored practice and runs counter to the Federal Rules of Civil Procedure; however, Plaintiffs did not raise this issue in their renewed motion to compel that was referred to the Special Master nor did he rule on same. It is improper to use a motion for reconsideration "to present new legal theories or arguments which could have been made earlier." *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, Civ. A. No. 09-261, 2009 WL 4016624, at *1 (W.D.Pa. Nov. 17, 2009). Thus, the issue cannot be raised in the first instance on reconsideration.

reconsideration because the evidence they relied upon was incomplete. (Docket No. 101 at 11-15). To this end, the deposition transcripts demonstrate that Plaintiffs' counsel elicited statements from Petrazio and Castelli that they relied on similar claims in their respective evaluations of Lori Graham's claim, but counsel conducted very little, if any, follow-up questioning that would illuminate their answers. (*See Petrazio Depo* at 106-115; *Castellli Depo* at 62:7-62:12). Further, the questions asked and answers given at the depositions were so generic that, despite the Court's prior ruling precluding any discovery by Plaintiffs as to similar claims, no objections were raised by defense counsel to this line of questioning. (*Id*.). Simply put, the deposition testimony of Petrazio and Castelli is insufficient to establish that Plaintiffs have met their burden on reconsideration.

In addition, subsequent to the motion hearing, Defendants have presented affidavits by Petrazio and Castelli that appear to this Court to have put the similar claims issue to rest once and for all. (Docket Nos. 104-3, 104-4). They each declare that their use of similar claims during their depositions described their past experience in handling insurance claims and did not relate to any specific claim they handled. (Docket No. 104-3 at ¶¶ 3, 4, 10; Docket No. 104-4 at ¶¶ 4, 5, 10). Neither recalled any specific claims that were similar to Lori Graham's or the claim numbers or valuations used in any other specific claims. (Docket No. 104-3 at ¶¶ 5, 6; Docket No. 104-4 at ¶¶ 6, 7). Further, they did not use settlement charts, verdict research, reports, graphs, or summaries of data on similar claims in their evaluation of Lori Graham's claim. (Docket No. 104-3 at ¶¶ 9, 11; Docket No. 104-4 at ¶¶ 9, 11). They also stated that they do not have access to any electronic databases that provide a search function for similar claims. (Docket No. 104-3 at ¶ 8; Docket No. 104-4 at ¶ 8). Thus, had Plaintiffs' counsel conducted the type of follow-up questions to these individuals as suggested by the Court at the July 21, 2010 hearing, the probable answers would not

support reconsideration of the earlier ruling precluding discovery of similar claims information.

The Sablack letter is also insufficient new evidence to support reconsideration of the R & R and Order. (Docket No. 79-10). Plaintiffs maintain that Sablack's letter undermines Defendant's argument that the production of similar claims information is unduly burdensome.[6] (Docket No. 79). However, the letter itself does not reveal much. (Docket No. 79-10). It only references Defendant's submission to the Insurance Commissioner of "data to show our rate need," with little other explanation. (*Id.*). In an affidavit, Sablack then explains that the information submitted to the Insurance Commissioner under cover of this letter included a summary of loss ratio data for UIM claims in eight counties in Pennsylvania and did not include any "information at the individual claim level concerning individual insureds who submitted UIM claims, the types of injuries claimed, or any other factors that may have been considered with respect to the valuation of any particular claim."[7] (Docket No. 98-7). In this Court's estimation, the loss ratio data is not responsive to Plaintiffs' initial discovery requests as Plaintiffs did not request this type of general information, but

---

[6] At the motion hearing, Plaintiffs also presented a proffer from counsel regarding the status of e-discovery and made many representations regarding the content of the deposition of Greg Jahnke, an IT representative of Defendant, in further support of their position that production of the similar claims information would not be unduly burdensome on Defendant. (*See* Docket No. 111). As stated in the parties' joint status report, Jahnke's deposition was completed on January 29, 2010 (Docket No. 99 at 5), well before these discovery issues were referred to the Special Master in April, but these matters were raised before the Court for the first time at oral argument. Thus, these arguments are not properly before the Court on reconsideration. *See Rhoades*, 2009 WL 4016624, at *1. Further, even if Plaintiffs had presented evidence in support of their position beyond this proffer from counsel (including any portions of Jahnke's deposition), which they have not, because it was available in January, it would not be new evidence that this Court could consider on reconsideration. *See Max's Seafood*, 176 F.3d at 677.

[7] The Court notes that Sablack had yet to be deposed as of the Court's motion hearing on July 21, 2010. (Docket No. 99 at 6). Apparently, the parties agreed to depose him outside the discovery schedule set by the Court, which ended on June 30, 2010.

7

requested specific information regarding UIM claims in the Western District of Pennsylvania for certain types of shoulder and knee injuries. (*See* Docket No. 79-2 at 1). Further, the Western District of Pennsylvania, Pittsburgh Division, consists of thirteen counties and the loss ratio data submitted to the Insurance Commissioner included only one of the counties in this District, i.e. Beaver County. Thus, Plaintiffs have not presented any evidence that Defendant's production of the similar claims information requested in their initial discovery requests would not be unduly burdensome, as they suggest. Accordingly, Plaintiffs have not met their burden to demonstrate that reconsideration is warranted.

Finally, the parties have filed supplemental briefs regarding the applicability of the decision in *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa. 2007) and its discussion of bad faith under 42 Pa.C.S. § 8371 to the instant motion. (Docket Nos. 105, 109). Given the above rulings, the procedural status of this case and the nature of the arguments, which reach the ultimate issue of whether the evidence in this case supports a bad faith cause of action under Pennsylvania law, any ruling by the Court at this juncture would be premature.

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' motion for reconsideration [79] is denied. Plaintiffs have not met their heavy burden to demonstrate that reconsideration of the earlier order dated April 14, 2010 is warranted.

It is further ORDERED that the parties shall file an updated joint status report regarding the status of discovery as to the Plaintiffs' individual claims by **August 13, 2010 at noon**.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: August 6, 2010
cc/ecf: All counsel of record.