**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| LORI GRAHAM, and PAUL GRAHAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09–969 |
| | ) | Judge Nora Barry Fischer |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

I.     INTRODUCTION

This lawsuit started as a straightforward individual action brought by Plaintiffs, Lori and Paul Graham, against their insurance company, Defendant Progressive Direct Insurance Company ("Defendant" or "Progressive"), seeking to recover for underinsured motorists benefits pursuant to their automobile insurance policy issued by Progressive, loss of consortium (by Paul Graham, only), and a claim of bad faith under Pennsylvania law, 42 P.A.C.S. § 8371.  Eight months of discovery as to these claims and the defenses asserted by Progressive followed.  Then, after the period for discovery closed, Plaintiffs filed the pending Motion for Leave to File a Second Amended Complaint and now seek to transform this litigation from an individual case into a class action.  (Docket No. 90). In their Motion, Plaintiffs request leave to add class plaintiffs and class action claims against Progressive, as detailed in their Proposed Second Amended Complaint.  (*Id.*; Docket No. 90-1).  They also implicitly request additional time to conduct discovery as to the class claims.  (*Id.*).

Progressive opposes the motion. (Docket No. 103). Plaintiffs' motion has been fully briefed and oral argument was held on August 9, 2010. (Docket Nos. 90, 103, 108, 111, *Hr'g Trans 8/9/10*). Upon consideration of Plaintiffs' Motion, their Proposed Second Amended Complaint, the parties' arguments, and for the following reasons, Plaintiffs' Motion [90] is DENIED. Accordingly, this matter will proceed as to the individual claims only as set forth in Plaintiffs' Amended Complaint.

## II.    BACKGROUND

The Court and the Court-appointed Special Master have exhaustively discussed the procedural and factual background of this case in two prior Memorandum Orders and the Special Master's Report and Recommendation ("R & R"). (Docket Nos. 62-1, 96, 110). Therefore, the Court will only address the background relevant to the disposition of the instant motion.

Plaintiffs initiated this lawsuit by filing a three-count Complaint against Defendant Progressive on July 23, 2009, asserting claims for underinsured motorist benefits, loss of consortium (by Paul Graham, only), and bad faith under Pennsylvania law. (Docket No. 1). The underlying factual allegations in Plaintiffs' Complaint were that Lori Graham was involved in an auto accident on October 29, 2007, wherein an underinsured motorist, Jayne Guzzie, failed to stop at a stop sign, colliding with Mrs. Graham's vehicle and causing her injuries. (*Id*. at ¶¶ 6-19).

Guzzie's insurance company, Allstate, determined that Guzzie was at fault for the accident and that Mrs. Graham's injuries were in excess of the policy limits under the policy that Guzzie held with Allstate ($25,000). (*Id*. at ¶¶ 20-23). A settlement was reached between Allstate and Graham, with consent of Progressive, wherein Allstate paid its policy limits in exchange for a release of future claims. (*Id*. at ¶¶ 24, 30, 31). Mrs. Graham also reserved the right to pursue a claim for underinsured motorists benefits under the policy she and her husband held with Progressive, a "stacked policy"

under which the policy limits were $500,000. (*Id*. at ¶¶ 27, 28, 31).

Mrs. Graham made an underinsured motorists claim to Progressive on January 24, 2008. (*Id*. at ¶ 40). Progressive made an offer to Mrs. Graham on April 9, 2009 of $55,000. (*Id*. at ¶ 54). She rejected that offer. (*Id*. at ¶ 55). Plaintiffs contend that Progressive acted in bad faith during said negotiations in that its claims adjusters should have made a decision on her claim by February 10, 2009 and that its offer "was far below any reasonable value attributable to the Graham claim and Progressive knew that the offer was far below a fair and reasonable offer." (*Id*.). In their initial Complaint, they further allege that Progressive acted in bad faith by:

> a. Failing to properly investigate and gather information necessary to make a fair and reasonable evaluation of the Graham claim;
>
> b. Failing to place a reasonable and fair value on the Graham claim in an attempt to pay less on the Graham claim than on similar underinsured and uninsured Progressive claims handled by Progressive previously;
>
> c. Making an offer substantially below the fair value of the claim;
>
> d. Making the $55,000.00 offer to the Grahams without any reasonable basis for making such a low offer or in reckless disregard of its lack of a reasonable basis for making such a low offer;
>
> e. Making a "lowball" offer in a dishonest attempt to deprive its insureds of fair and reasonable compensation for their injuries[,] damages and losses;
>
> f. Acting with a motive of self-interest or ill will towards its insureds when evaluating and tendering a "lowball" offer beyond any reasonable or justifiable offer;
>
> g. Failing to follow its own internal procedures, rules, regulations, directives and claim handling practices while evaluating the Graham claim;
>
> h. Applying inconsistent and/or different standards to the Graham

claim than those applied to other claims of a similar nature submitted to Progressive Insurance Company in an effort to deny the Grahams fair and adequate compensation for their injuries[,] damages and losses and to save Progressive from having to pay fair and just compensation to the Grahams;

i. In forcing the Grahams to institute legal proceedings to obtain benefits to which they are clearly entitled under the policy of insurance with a motive of coercing the Grahams to take less than a fair and reasonable amount to compensate them for their injuries, damages and losses.

(*Id*. at ¶ 56).

Progressive filed its Answer to Plaintiff's Complaint on September 21, 2009, denying the allegations in the Complaint and raising a number of affirmative defenses to Plaintiffs' claims. (Docket No. 7). Simultaneously, Progressive moved the Court to bifurcate and stay discovery. (Docket Nos. 8, 9). The Court ordered a response to Progressive's motion and scheduled a Case Management Conference for October 20, 2009. (Docket No. 10). As is the Court's practice in all matters, the parties were ordered to confer and submit a joint Rule 26(f) Report and ADR Stipulation prior to the Case Management Conference. (*Id*.). Plaintiffs timely filed their response and brief in opposition to Progressive's motion to bifurcate and stay discovery. (Docket Nos. 13, 14).

Subsequently, Plaintiffs filed an Amended Complaint on October 8, 2009.[1] (Docket No. 15). The substance of the allegations in the Amended Complaint are generally the same as those contained in their initial Complaint. However, they alleged some additional facts in support of their bad faith claim. Specifically, in addition to the averments quoted above, they alleged that

---

[1]

The Court notes that Plaintiffs did not seek leave of Court prior to filing same, however, the filing of the Amended Complaint was in accord with Federal Rule of Civil Procedure 15(a)(1)(B) as it was filed within 21 days after service of Defendant's initial Answer. FED.R.CIV.P. 15(a)(1)(B).

Progressive acted in bad faith:

> j. In removing the un-insured/underinsured arbitration clause from the Graham policy of insurance without a corresponding reduction in premium;
>
> k. In failing to give adequate notice of the material change to the Graham policy whereby Progressive removed the arbitration clause from her policy and decreased the rights of the Grahams without a corresponding reduction in premium;
>
> l. In deliberately attempting to mislead the Grahams by displaying a policy of insurance which contained a single-member arbitration clause when such a clause did not exist in the Graham policy;
>
> m. In deliberately misrepresenting the displayed policy to be Grahams' actual policy when the actual policy contains no arbitration clause of any kind.

(Docket No. 15 at ¶ 56).

The parties then submitted their Rule 26(f) Report on October 13, 2009. (Docket No. 17). In said Report, the parties stated that "[t]he Plaintiffs and Defendant **do not anticipate that any additional parties will be joined**. However, any additional parties shall be joined by October 15, 2009." (Docket No. 17 (emphasis added)).

Progressive answered Plaintiffs' Amended Complaint on October 16, 2009, again denying the pertinent allegations and raising affirmative defenses to Plaintiffs' claims. (Docket No. 19). As pled by Plaintiffs, both the initial Complaint and the Amended Complaint are individual actions alleging the same three claims against Defendant, i.e., for underinsured motorists benefits, loss of consortium (by Paul Graham, only), and bad faith under Pennsylvania law. (*See* Docket Nos. 1, 15). There are no class action-type allegations in either Plaintiffs' Complaint or their Amended Complaint. (*Id*.). There is reference, however, to the removal of the arbitration provision in their

policy in the Amended Complaint. (*See* Docket No. 15).

The Court held the first session of a case management conference on October 20, 2009, during which the Court discussed the status of investigation and discovery in the case, including the scheduling of an independent medical exam for Mrs. Graham, the referral of the case to the Court's mandatory alternative dispute resolution program and Rule 26(a) disclosures. (Docket No. 21). However, the conference was not conducted given Progressive's counsel's failure to properly serve Rule 26(a) disclosures at that juncture. (*Id*.). As a result, the Court scheduled a second session for November 2, 2009. At that session, the Court addressed Progressive's motion to bifurcate and stay discovery, heard argument, denied the motion, and, after discussion, entered a Case Management Order. (Docket Nos. 27, 34).

In the Case Management Order, the Court ordered that all discovery be completed by **February 26, 2010**. (Docket No. 28 at ¶ 2). Pertinent to the instant motions, the Court also ordered that:

> 7. Any motions to amend pleadings or to add new parties shall be filed no later than **n/a**.[2] The responding party shall file its response within five (5) days of receipt of said motion, excluding weekends and holidays. No reply briefs are permitted.

(Docket No. 28 at ¶ 7).

The parties then proceeded to discovery. The Court will not belabor the issue, but as discussed in prior Orders, discovery has been very contentious resulting in numerous discovery objections and motions, one of which was referred to a Special Master for resolution. (*See* Docket No. 96). Further, the parties twice sought extensions of time for the completion of discovery, both

---

[2]

*See* discussion *supra* at p. 5.

of which were granted by the Court, finding that "good cause" was present, sufficient to grant the extensions. (Text Order 2/16/10; Docket No. 65). Ultimately, the discovery period was scheduled to close on **June 30, 2010**. (Docket No. 65).

Prior to the close of discovery, Plaintiffs filed two discovery-related motions, specifically: (1) on June 23, 2010, they filed a motion for sanctions wherein they sought to reopen two Rule 30(b)(6) depositions based on an argument that the representatives who were offered by Defendant to be deposed did not have sufficient knowledge of the matters raised by Plaintiffs in their notice of deposition; and (2) on June 28, 2010, they filed a motion for reconsideration of the Court's prior Order, adopting the Special Master's R & R, wherein the Court denied Plaintiffs' motion for discovery of "similar claims" information. (Docket Nos. 74, 79). Plaintiffs' motion for sanctions was struck by the Court because Plaintiffs failed to comply with this Court's requirement that counsel meet and confer in an effort to resolve discovery disputes prior to filing discovery motions and to affirm to the Court in a certificate of conferral filed contemporaneously with such motion that the parties negotiated in good faith to resolve their discovery dispute but no agreement could be reached. (Docket No. 89). This motion was never re-filed by Plaintiffs. Plaintiffs' motion to compel the discovery of similar claims information has been denied by the Court in a Memorandum Order after substantial briefing and argument by the parties were permitted. (Docket No. 110). No other extensions of time were sought or granted by the Court. As the requested additional discovery was not allowed, the period for fact discovery closed as of June 30, 2010.

On July 6, 2010, approximately eight months after the expiration of the time period for filing amendments to pleadings and to join parties and one week after the expiration of the Court-ordered discovery period, Plaintiffs filed the pending Motion for Leave to File a Second Amended

Complaint, attaching a Proposed Second Amended Complaint. (Docket Nos. 90, 90-1). In their Proposed Second Amended Complaint, Plaintiffs have alleged the same three individual claims against Progressive that were raised in their initial and amended complaints. (Docket No. 90-1). They have altered some of the allegations and have also identified proposed class action plaintiffs and two purported class action claims against Progressive, for breach of contract and bad faith under Pennsylvania law. (*Id*.).

The allegations in support of the individual claims, underinsured motorists benefits (restyled as breach of contract), loss of consortium (by Paul Graham, only), and bad faith under Pennsylvania law, are largely identical to those asserted in Plaintiffs' Amended Complaint, with a few notable exceptions. (*See* Docket Nos. 15, 90-1). Plaintiffs have deleted the subparagraphs included in their Amended Complaint which allege that Defendant's bad faith conduct resulted from the failure to provide notice to the Grahams about the removal of the arbitration clause. (*Id*.). That is, subparagraphs j, l, k and m in paragraph 56 of the Amended Complaint were deleted. (*Id*.). In addition, Plaintiffs have added the following allegation supporting their individual bad faith claim, that Progressive acted in bad faith "[i]n acting with hostility, ill will, personal animus and the utmost bad faith towards Lori Graham throughout the course of the litigation of this case, including discovery." (Docket No. 90-1 at ¶ 102(j)). Otherwise, the individual allegations appear to be the same as those set forth in the Amended Complaint.

Turning to the class action allegations, the class plaintiffs are described as:

> Class A: All Pennsylvania insureds who purchased an auto policy from Defendant which included any form of UM/UIM arbitration provision wherein the arbitration provision was eliminated from the policy at renewal without notice as required by Pennsylvania state law; and,

> Class B: All Pennsylvania insureds who purchased an auto policy
> from Defendant which included any form of UM/UIM arbitration
> provision wherein the arbitration provision was eliminated from the
> policy at renewal without notice as required by Pennsylvania state law
> and who requested arbitration of a UM/UIM claim, with said request
> being denied by Defendant.

(Docket No. 90-1 at ¶ 2). The class allegations thoroughly detail the "evolution" of arbitration

provisions in the automobile policies issued by Progressive and purchased by the class plaintiffs

during several policy periods. (*Id*. at 45-69). The terms are summarized as follows:

| Policy Period | Arbitration Language |
|---|---|
| 9/28/05 - 3/28/06 | "Mutual consent"<br>Plaintiffs allege that the policy language was the following:<br>"If we and an insured person cannot agree on: 1. the legal liability of the operator or owner of an uninsured motor vehicle or an underinsured motor vehicle; or 2. The amount of damages sustained by the injured person; this will be determined by arbitration if we and the insured person mutually agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred." |
| 3/28/06 - 9/28/06 | "Unilateral"<br>Plaintiffs allege that "[i]n connection with the 3/28/06-9/28/06 coverage period, Defendant changed the language of its UM/UIM arbitration provision to state that either party could force arbitration of UM/UIM claims." |
| 9/28/06 - 3/28/07 | "Mutual Consent"<br>Plaintiffs allege that "[i]n connection with the next coverage period – 9/28/06-3/28/07 – Defendant once again changed the language of its UM/UIM arbitration provision, returning to the mutual consent provision that was last in place for the policy period between September 28, 2005 and March 28, 2006." |
| 3/28/07 - 9/28/07 | None<br>Plaintiffs allege that "the UM/UIM arbitration provision was completely eliminated from Plaintiffs' policy commencing with the 3/28/07-9/28/07 policy renewal." |

(Docket No. 90-1 at ¶¶ 45-69).[3]  The class plaintiffs allege that Progressive's removal of the mutual consent arbitration provision, without providing notice to any of the class plaintiffs, who then renewed their policies, constitutes breach of contract and bad faith under Pennsylvania law.  In sum, the class plaintiffs' theory, previously advanced by the Grahams only as allegations in support of their individual bad faith claim, is to hold Progressive liable for the failure to provide what they contend is statutorily required notice of the removal of the arbitration provision from their policies prior to renewal.

III.    APPLICABLE LEGAL STANDARD

The threshold issue to be resolved is what is the appropriate legal standard to be applied to this dispute, i.e., whether the Court should analyze Plaintiffs' Motion for Leave to File a Second Amended Complaint, filed after the deadline set forth in the Court's scheduling order, under Rule 15 or Rule 16 of the Federal Rules of Civil Procedure.  Rule 15(a)(2) provides that leave to amend pleadings should be "freely granted when justice so requires," FED.R.CIV.P. 15(a)(2), while Rule 16(b)(4) requires that the moving party demonstrate "good cause" prior to the Court amending its scheduling order, FED.R.CIV.P. 16(b)(4).  The United States Court of Appeals for the Third Circuit has recognized that there is "tension" between Rule 15(a)(2) and Rule 16(b)(4), but has yet to explicitly hold which Rule applies in a situation akin to the present matter.  *See Race Tires America,*

---

[3]

Noticeably absent from these allegations is any reference to the policy in effect at the time of Mrs. Graham's accident in October of 2007, i.e., the 9/28/07 - 3/28/08 policy.  Thus, as discussed in more detail *infra*, it is clear to the Court that Plaintiffs seek to essentially bring two separate actions involving different legal theories and separate insurance policies: (1) the class action claims involving the failure to provide notice of the removal of the arbitration clause prior to the renewal of the 3/28/07-9/28/07 policy; and (2) the individual action involving Plaintiffs' claims for underinsured motorists benefits under the 9/28/07-3/28/08 policy, bad faith for allegedly mishandling that claim, and the related loss of consortium claim.

*Inc. v. Hoosier Racing Tire Corp.*, --- F.3d ---, 2010 WL 2871746 (3d Cir. 2010). District Courts facing the issue have found persuasive decisions by several other Courts of Appeals and ultimately concluded that it is appropriate to first analyze such a dispute under Rule 16. *See Price v. Transunion, LLC*, --- F.Supp.2d ---, 2010 WL 3310241, at *2-3 (E.D.Pa. Aug. 17, 2010); *see also Componentone, L.L.C. v. Componentart, Inc.*, Civ. A. No. 05-1122, 2007 WL 2580635, at *1-2 (W.D.Pa. Aug. 16, 2007).

As noted by the district court in *Componentone*, "once the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b) demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *Componentone*, 2007 WL 2580635, at 2; *see also Price*, 2010 WL 3310241, at *2 ("where a party seeks to amend its pleadings after a deadline set by court order, the decision whether to allow the amendment is controlled by Rule 16(b)."); Wright, Miller, Kane, Marcus, FEDERAL PRACTICE AND PROCEDURE, 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed. 2010)("to the extent that other federal rules, such as Rule 15 governing pleading amendments, contain a more lenient standard than good cause, the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15."). The Court finds this authority persuasive, and believes that our Court of Appeals would likewise initially analyze the present situation under Rule 16.

IV.    DISCUSSION

Having determined the appropriate standard of review, the Court will now analyze Plaintiffs' Motion under Rule 16, and then, to the extent necessary, under Rule 15.

A.      *Application of Rule 16*

1.      Rule 16 Legal Standard

Rule 16 of the Federal Rules of Civil Procedure authorizes a district court to enter pretrial scheduling orders setting deadlines for the completion of discovery, the amendment of pleadings and the joinder of parties.  FED.R.CIV.P. 16.  Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." FED.R.CIV.P. 16(b)(4).  "The purpose of limiting the period for amending the pleadings is to assure 'that at some point both the parties and the pleadings will be fixed.'" *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004)(quoting FED.R.CIV.P. 16, Advisory Committee Note (1983)).  "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Componentone*, 2007 WL 2580635, at *2; *see also* FED.R.CIV.P. 16, Advisory Committee Note (1983) ("the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").  Thus, Plaintiffs, as the moving parties, have the burden to demonstrate "good cause" before the Court will amend its Case Management Order.

2.      Rule 16 Analysis

In this Court's estimation, Plaintiffs have failed to demonstrate that they have diligently pursued their proposed class action claims and, thus, have not demonstrated "good cause" for the Court to amend its scheduling order to permit them to add new claims and parties.  The motion to amend presented to the Court on July 6, 2010 is untimely filed as it was submitted approximately eight months after the period for the amendment of pleadings and for joinder of parties expired.  (*See* Docket No. 28).  Counsel for both parties represented to this Court in September of 2009 that they

did not intend to amend the pleadings nor join any additional parties beyond October of 2009. (Docket No. 17). As noted, the portion of the Court's Case Management Order typically addressing motions to amend and/or to join parties was marked as "n/a," meaning that no deadline for the submission of such motions was needed in this case given the representations made to the Court at the outset. (*Id*.). Plaintiffs did not move the Court for an extension of time to file an amended complaint or to join new parties *at any time* before the close of discovery on June 30, 2010. The only reference to class action claims that was made by the parties in this litigation was an informal statement by Plaintiffs' counsel during a settlement conference on June 1, 2010, when he suggested that Plaintiffs may seek to add class claims in this case, but no action was taken before discovery closed. (Docket No. 96 at 2-3). As the motion is untimely, Plaintiffs have the burden to demonstrate that they acted diligently in presenting their class action claims to the Court.

Instead, the Court finds that Plaintiffs' arguments in support of their claimed diligence are not persuasive. Essentially, their arguments are two-fold: first, they contend that the class action claims are based on evidence that was not discovered until June 16, 2010, after Defendant produced information to them in response to a Court Order issued on May 18, 2010; and second, they maintain that they acted with dispatch in filing the motion to amend soon after class action counsel, Carlson Lynch LTD, entered their appearances in this case. (Docket No. 91).

Turning first to the newly discovered evidence theory, Plaintiffs maintain that the "factual basis for these proposed class allegations was discovered by Plaintiffs, ***to a significant extent***, from Defendant's document production on June 16, 2010." (Docket No. 91 at 5)(emphasis added). Given this qualification, the Court understands that their position is not that the class claims *solely* rely on the purported newly discovered evidence. Many courts have recognized that "[w]here ... the party

13

knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Price*, 2010 WL 3310241, at *3. After a comparison of the allegations in the Plaintiffs' Amended Complaint — filed in October of 2009 — to the allegations in the Proposed Second Amended Complaint — not submitted until July of 2010 — it is apparent to the Court that the class claims rely on facts that were in Plaintiffs' possession since the outset of this litigation. (*See* Docket Nos. 15, 90-1). As of October 8, 2009, when Plaintiffs filed their Amended Complaint, they were challenging the change or lack of an arbitration provision in their policies. To that end, at the case management conference on November 2, 2009, Plaintiffs' counsel asserted to the Court that the failure to give notice of the removal of the arbitration clause was "a large part of our case." (Docket No. 34 at 46). He further explained that "[w]hen [Progressive] stuck this in at a renewal, there was no adequate notice to let this insured, ***or any insured***, know that they were doing this." (Docket No. 34 at 47 (emphasis added)).

Plaintiffs also argue that "[t]he documents obtained by Plaintiffs ... confirm a course of conduct by Defendant designed to obfuscate the substance and significance of various policy amendments which, ultimately, eliminated all opportunity for policy holders to submit their UM/UIM claims to binding arbitration." (Docket No. 91 at 5-6). However, they overstate the significance of the recently produced information vis-a-vis the information already present in the record and possessed by Plaintiffs. The Grahams attached a certified copy of their insurance policy dated May 12, 2009 to their Complaint.[4] (*See* Docket No. 1-2). Moreover, they were parties to all of the policies cited in the Proposed Second Amended Complaint. They were also in possession of

---

[4] Mrs. Graham had asked for a certified copy when she was handling the claim herself in a letter to Kasey Petrazio dated April 29, 2009. (Docket No. 68-11).

those policies for much of this litigation as Progressive produced them to Plaintiff on November 5, 2009.[5]  In fact, on May 6, 2010, Plaintiffs filed their brief in support of a motion for extension of time to conduct discovery and referenced each therein.  (Docket No. 67).  In response to that motion, Progressive also attached each of the policies to its brief in opposition, filing them of record. (Docket No. 68).  Thus, Plaintiffs cannot credibly maintain that the allegations regarding the changes in the policies were based on information that was requested in their May 19, 2010 Rule 30(b)(6) deposition notice or otherwise not discovered until June of 2010.

Plaintiffs also rely on a January 20, 2008 letter by Michael Sablack, Assistant General Counsel of Defendant, to the Pennsylvania Insurance Department ("PID"), which requires some further discussion.  That letter (the "Sablack letter") was submitted for the purpose of obtaining approval from the PID for one of the form policies now in dispute (the March 28, 2007 through September 28, 2007 policy).  It provides, in pertinent part:

> There is one change being made with this endorsement. We are modifying the UM/UIM Arbitration from one where either party may demand arbitration to one where arbitration is only available where both the insured and the insurer agree to the arbitration. This change will return our policy to its previously filed and approved arbitration language.
>
> **For our renewal customers, we plan to send the new endorsement to customers with their renewal quote. We will also include a notice that clearly informs the insured of the change to his coverage. Since this is sent with the renewal quote, the insured will have enough time to determine if they wish to renew with Progressive with the changed policy terms. We think this is an**

---

[5]  In their Motion to Compel Discovery, Plaintiffs stated that "[o]n November 5, 2009 at 4:06 P.M., Progressive produced ... documents numbered 2000-2187 which appear to be various policy versions of the Graham policy from inception date through the current policy."  (Docket No. 36 at ¶ 28).

> **acceptable renewal practice in Pennsylvania since a clear notice
> of the change in policy terms is being provided within a
> reasonable time before renewal . . . .**

(Docket No. 90-1 at ¶ 60 (emphasis added by Plaintiffs)).  Plaintiffs further allege that this type of

notice was never subsequently provided by Progressive to its policyholders (the class plaintiffs).

This letter, however, does not negate the fact that the breach of contract and bad faith claims rely on

the simple failure to provide notice of the removal of the arbitration clause to policyholders prior to

renewal — facts known to Plaintiffs at least in October of 2009 at the time of the filing of the

Amended Complaint and certainly, when proffered to the Court by Plaintiffs' counsel during the

Case Management Conference on November 2, 2009 and when later advocated in support of the

requested discovery in May of 2010.[6]  At most, the Sablack letter is only evidence which supports

claims that should have been brought months ago.

Plaintiffs also contend that they were diligent in pursuing their claims because lead counsel

in the case, Robert Deer, Esquire, does not have sufficient expertise in class action litigation in order

to prosecute the class action claims.  As a result, they retained class action counsel, attorneys from

the firm of Carlson Lynch LTD, on June 10, 2010 and thereafter, filed their motion to amend.

(Docket Nos. 71, 72, 73). One of those attorneys, Bruce Carlson, Esquire, also represented to the

---

[6]

In the brief in support filed on May 6, 2010, Plaintiffs argued the following with respect to
the policy covering the period of March 28, 2007 through September 28, 2007:

> Astoundingly, the entire arbitration clause was removed from the
> policy without any notification whatsoever, despite the fact that
> removal of the arbitration clause altogether was a material and
> important change in the policy which reduced coverage and benefits
> to the insured while still collecting basically the same premiums.

(Docket No. 67 at 1).

Court at the motion hearing that he was out of the country from June 10, 2010 until June 17, 2010. *Hr'g Trans 8/9/10* at 3. Despite being contacted by Plaintiffs on June 1 or 2, 2010 and entering his appearance on June 10, 2010, he stated that the basis of the motion to amend was not discovered until he returned from his trip. *Id*. at 3-4.

However, as discussed above, the Court has rejected Plaintiffs' position that the facts supporting the class action claims were not known at the outset of this litigation. Moreover, given the fact that the attorneys from Carlson Lynch entered their appearances in this action prior to the date of the discovery of the supposed "new evidence," the Court places little weight on the representation that class claims could not have been brought without the cited documents.[7] Indeed, their conduct demonstrates otherwise and their explanations are not convincing. "Carelessness, or attorney error, which might constitute 'excusable neglect' under Rule 6(b), is insufficient to constitute 'good cause' under Rule 16(b)." *Chancellor v. Pottsgrove School Dist.*, 501 F.Supp.2d 695, 701-02 (E.D.Pa. 2007)(citations omitted). Likewise, tactical errors and delays by experienced attorneys, such as those made in this action, do not demonstrate that Plaintiffs acted with diligence to this Court.

Finally, and importantly, Plaintiffs have proffered no reason for the failure to file the motion to amend within the discovery period, i.e., by June 30, 2010. There is simply no reason why this could not have been accomplished given the "legal firepower" retained by Plaintiffs in this case. Indeed the Sablack letter was the substance of the motion for reconsideration on similar claims that

---

[7]
Among other things, lead counsel for Plaintiffs stated to this Court in November of 2009 that no notice of the removal of the arbitration clause was provided to any of Progressive's policyholders and then suggested on June 1, 2010 that a class action may be brought based on that fact. He made both of these statements without the benefit of the cited Sablack letter.

was recently addressed by the Court. (Docket No. 74). That motion – and the Sablack letter – were filed <u>before</u> the close of the discovery period. (*Id.*). Given that the motion to amend implicitly requests that the Court also extend the discovery period, the untimely filing demonstrates a clear lack of diligence by Plaintiffs.[8]

### 3. Rule 16 Conclusion

In sum, Plaintiffs have not met their burden to demonstrate that they acted diligently in pursuing the proposed class action claims and, thus, have failed to establish "good cause" for the Court to amend its Case Management Order to permit the untimely amendment and extend the discovery period, once again. Accordingly, Plaintiffs' motion seeking leave to amend the Court's scheduling order and to permit them to amend their complaint a second time is denied under Rule 16(b)(4).

### B. *Application of Rule 15*

Having found that the requested amendment is not permitted under Rule 16, the Court's analysis can end here. However, for completeness, and because the Court would deny the motion to amend under Rule 15 as well, the Court will further analyze Plaintiffs' motion under that standard.

### 1. Rule 15 Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." FED.R.CIV.P. 15(a)(2). "[M]otions to amend pleadings should

---

[8]

The Court further notes that the motion for sanctions and motion for reconsideration both requested an enlargement of the discovery period for the completion of discovery limited to the issues raised in those motions. (Docket Nos. 74, 79).

be liberally granted," *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir.2004), and "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust," *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204; *see also Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given'"). However, in this Circuit prejudice to the non-moving party is the touchstone for denial of leave to amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). "Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991).

Certainly, "[t]he denial of a motion to amend a complaint based on the movant's undue delay must be based on more than the mere passage of time." *Logan v. In-Ter-Space Services, Inc.*, Civil A. No. 07-0761, 2007 WL 2343868, at *2 (E.D. Pa. Aug. 15, 2007). "However, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Id.* (citing *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir.2001) (citation and quotations omitted)). While "[t]he question of undue delay, as well as the question of bad faith, requires that [a court] focus on the [moving party's] motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that [a court] focus on the effect on the [non-moving party]." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir.1984). As to prejudice, the Court of Appeals has "considered whether allowing an amendment would result in

19

additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273 (citing *Adams*, 739 F.2d at 869).  Given the liberal standard under Rule 15(a), "the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007).

### 2. Rule 15 Analysis

The parties have presented arguments as to undue delay, prejudice and futility.  This legal test is in the disjunctive, meaning that if Progressive meets its burden to prove any one of these elements, the Proposed Second Amended Complaint should not be permitted.  Therefore, to the extent necessary, the Court will address each argument, in turn.

### a. Undue Delay by Plaintiffs

"[W]hile bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton,* 252 F.3d at 273 (internal citations omitted).  For the reasons discussed above as to Rule 16, the reasons proffered by Plaintiffs for failing to timely amend their complaint are also insufficient under Rule 15.  The proposed class action claims arise out of facts that were known to Plaintiffs early on in this litigation and their delay in seeking amendment until after the close of discovery is undue. *See Panetta v. SAP America, Inc. et al.*, 294 Fed.Appx. 715, 718 (3d Cir. 2008)(not precedential) (affirming district court's decision to deny leave to amend complaint to add additional claim after the close of discovery); *see also Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993)(same).  Given the present record, the contents of Plaintiffs' motion and the arguments of the parties, Progressive has demonstrated that Plaintiffs' delay is not justified.  In addition, to permit the proposed amendment would place an unwarranted burden on the Court given that the parties intend

to relitigate discovery issues that have been previously resolved and further compound this litigation by inserting additional parties as well as factual and legal matters into an already over-litigated case. *See Gee v. Dillard Texas Operating Ltd. Partnership*, 1996 WL 734948 (N.D.Tex. Dec. 11, 1996)("Were the court to permit [the plaintiff to amend her complaint to add class action claims], it would burden not only the defendants, but would burden the court as it attempted to manage the parts of the lawsuit that are class-based, and against corporate-type defendants, and those that are not."). Therefore, the motion to amend is denied under Rule 15 because Progressive has demonstrated undue delay.

### b. Prejudice to Defendant

Defendant will also be prejudiced if the amendment is authorized. It would transform this litigation from a straightforward individual action brought by two plaintiffs into a complex class action involving potentially hundreds or thousands of plaintiffs. *See Cureton*, 252 F.3d at 274 (affirming district court's decision to deny a proposed amendment that would "fundamentally alter" the litigation). Although Plaintiffs have not clearly articulated the amount of discovery needed to discover their proposed class claims, undoubtedly, permitting the requested amendment will result in "additional discovery, cost, and preparation to defend against new facts [and] new theories" by Progressive.[9] *Id.* at 273. Based on the fact that this is presently an individual action and the proposed amendment could potentially involve hundreds or thousands of class plaintiffs, the discovery could be substantial and time-consuming. "When a party fails to apprise the opposing

---

[9]

Given the changes in the policy language, this Court envisions third party discovery directed to the PID and possibly other insurance carriers and the Insurance Services offices, in addition to discovery of similar claims which this Court has thus far denied.

party of the 'possibility of a class action amendment at the earliest possible date' and the opposing party 'expends time and resources in shaping the litigation as an individual lawsuit, it would be unduly prejudicial to impose upon that [party] the added expense and complexity of a class action.'" *In re Ameritech Corp.*, 188 F.R.D. 280, 284 (N.D.Ill. 1999)(quoting *King v. Motor Freight Express, Inc.*, No. 78 C 4133, 1980 WL 18238 at *2 (N.D.Ill. July 28, 1980)). Here, the discovery completed to this point has focused on the Plaintiffs' individual claims and much of that discovery will need to be duplicated in order to focus on the class claims. Indeed, Plaintiffs have announced their intent to relitigate certain discovery issues that have already been resolved by the Court as to their individual claims. (Docket No. 112 at ¶¶ 2, 4). Hence, the proposed amendment would essentially require Progressive and the Court to begin litigating this case anew, resulting in additional cost and even more delay. *See Cureton*, 252 F.3d at 274.

At the outset of this litigation, Plaintiffs complained of the lack of timeliness of Progressive's staff in handling their insurance claim. (Docket No. 21). In fact, one of the theories in support of their bad faith claim is the alleged delay by Progressive in adjusting their claim. (Docket No. 15 at ¶ 55). Given Plaintiffs' complaints, and defense counsel's limited investigation up until the time of the initial Case Management Conference, the Court pronounced that discovery would be "expedited" in this case. (*See* Docket No. 21). Of course, nothing has been expedited, to this point. Rather, there has been an almost complete lack of cooperation by counsel on both sides during a lengthy period of discovery.[10] While Progressive shares some of the blame, its counsel's actions certainly

---

[10]

This Court generally permits only 150 days for discovery. *See* Practices & Procedures of Judge Nora Barry Fischer § III.B.1 (effective 3/23/10), *available at*: http://www.pawd.uscourts. gov/Documents/Judge/fischer_pp.pdf.

do not outweigh the prejudice Progressive would suffer, if the Proposed Second Amended Complaint were permitted and discovery was to restart.

Further, Plaintiffs' Proposed Amended Complaint interjects additional facts and legal theories into this case. (Docket No. 90-1). Permitting Plaintiffs to prosecute these legal theories and requiring Progressive to defend them at this juncture would also prejudice Progressive. As discussed above, in their Proposed Second Amended Complaint, Plaintiffs have essentially set forth two separate cases: (1) the individual case arising from the accident in October of 2007, Plaintiffs' subsequent insurance claim and the alleged mishandling of the claim by Defendant, which is based on the 9/28/07 - 3/28/08 version of the policy; and (2) the class action arising from the failure to provide notice of the removal of the arbitration clause in conjunction with the renewal of the policy, which is based on the 3/28/07 - 9/28/07 version of the policy.[11] (Docket No. 90-1). Thus, the individual and class actions involve different sets of facts which occurred during different time periods and implicate different versions of the insurance policy.

Finally, Plaintiffs make much of this Court's prior decision in *Bowser Cadillac, LLC v. General Motors Corp.*, Civ. A. No. 07-1149, 2008 WL 2802523 (W.D.Pa. July 18, 2008), where this Court permitted the plaintiff to file an amended complaint after the deadline for the filing of amendments had expired. However, *Bowser* is plainly distinguishable from this case. In *Bowser*, this Court permitted the proposed amendment only after finding that the facts underlying the

---

[11]

To this end, the Court hopes that Plaintiffs consider the District Court's suggestion in *Gee v. Dillard Texas Operating Ltd. Partnership*, 1996 WL 734948 (N.D.Tex. Dec. 11, 1996), that if Plaintiffs "desire[ ...] to pursue [this class action], [they] can initiate it separately and consider dismissing from the instant suit the claims that would be duplicative of the class action, leaving for litigation in the present case the claims that are not coterminous."

proposed amendment had been recently discovered and that there would be little, if any, prejudice to the defendant. There, the proposed amended complaint added only a single breach of contract claim against the defendant and the plaintiffs proffered that the remaining discovery could be accomplished in a *single day*. *Id*. at *7. Thus, the facts in *Bowser* are far afield from the present circumstances.

c.      Futility of Amendment

"Futility" challenges the legal sufficiency of the amendment. *Forman*, 371 U.S. at 182. The parties hotly contest the scope of this Court's review of the Proposed Second Amended Complaint at this stage as to whether the class claims are legally sufficient. (Docket Nos. 103, 108; *Hr'g Trans 8/9/10*). Given the Court's rulings that Plaintiffs have not demonstrated "good cause" to amend the Court's Case Management Order, and that Progressive has met its burden to demonstrate both that Plaintiffs unduly delayed in bringing their proposed class action as well as that Progressive would be prejudiced by requiring it to defend the proposed class action, the Court need not comprehensively analyze each of the parties' arguments as to futility. However, the Court does note that Progressive has challenged the legal sufficiency of the Proposed Second Amended Complaint and that many of Progressive's arguments are well-taken.

3.      <u>Rule 15 Conclusion</u>

Without resolving the merits of the parties' arguments on futility, the Court finds that the legal issues presented by the parties, including those involving class certification, further demonstrate to the Court that permitting the proposed class action would cause considerable delays in this already delayed case. While Rule 15 has generally been interpreted liberally, the Court must also construe and administer all of the Federal Rules of Civil Procedure in order "to secure the just,

speedy, and inexpensive determination of every action and proceeding." FED.R.CIV.P. 1. Such a disposition benefits both litigants and the Court. The most expedient and inexpensive way to resolve Plaintiffs' individual claims in their Amended Complaint is to set summary judgment deadlines, resolve any summary judgment motions and then set the matter for trial. Permitting the proposed class action and re-opening discovery at this point would completely stall Plaintiffs' individual case while the class action is addressed. Such a result runs counter to Rule 1, is not acceptable to the Court and prejudices Progressive.

In addition, Progressive has demonstrated to the Court that Plaintiffs have unduly delayed the filing of their Proposed Second Amended Complaint and that it would be prejudiced if Plaintiffs' sought after amendment was permitted after the close of discovery. Indeed, the proposed class action would "fundamentally alter" these proceedings and "could have been asserted earlier." *Cureton*, 252 F.3d at 274. Equitable considerations weigh heavily against permitting the proposed amendment at this time. Thus, Plaintiffs' motion to amend is likewise denied under Rule 15(a)(2).

V.      CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Leave to File a Second Amended Complaint [90] is denied. An appropriate order follows.


                                                *s/ Nora Barry Fischer*
                                                Nora Barry Fischer
                                                United States District Judge


Dated: September 15, 2010

cc/ecf: All counsel of record